1  **ROBERT R. HENSSLER JR.**
   California State Bar No. 216165
2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
   225 Broadway, Suite 900
3  San Diego, California 92101-5008
   Telephone: (619) 234-8467
4  email: Robert_Henssler@fd.org

5  Attorneys for Mr. Placencia-Medina

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE ROGER T. BENITEZ)**

| UNITED STATES OF AMERICA, | ) CASE NO. 08CR0799-BEN |
|---|---|
| Plaintiff, | ) |
| v. | ) |
| **GILBERTO PLACENCIA-MEDINA**, | ) STATEMENT OF FACTS AND<br>) MEMORANDUM OF POINTS AND<br>) AUTHORITIES IN SUPPORT OF |
| Defendant. | ) DEFENDANT'S MOTIONS |

**I.**

**STATEMENT OF FACTS**[1]

Agents of the United States Border Patrol arrested Mr. Placencia-Medina on February 18, 2008, two miles east of the San Ysidro Port of Entry. Mr. Placencia-Medina was initially questioned without being given <u>Miranda</u> warnings. Subsequently, Mr. Placencia-Medina was advised he had a right to contact the Mexican consulate and apparently was questioned again without <u>Miranda</u> warnings. Then, Mr. Placencia-Medina was advised that his Administrative Rights would no longer apply because he was being charged criminally. Mr. Placencia-Medina was then advised of his <u>Miranda</u> rights and questioned for a third time.

//

---

[1] This statement of facts is based on the complaint and indictment filed by the government and the discovery provided by the government. Mr. Placencia-Medina does not accept this statement as his own, and reserves the right to take a contrary position at motion hearings and trial. Additionally, Mr. Placencia-Medina reserves the right to challenge the truth and accuracy of these facts in any subsequent pleadings or during any further proceedings.

On March 20, 2008, Mr. Placencia-Medina was arraigned on an indictment alleging a violation of 8 U.S.C. §1326, specifically attempted entry after deportation.

To date, counsel for Mr. Placencia-Medina has received some discovery and a DVD. Counsel has not yet had the opportunity to review Mr. Placencia-Medina's immigration file or received any recordings of his removal proceedings. These motions follow.

## II.

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

Mr. Placencia-Medina moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely connected investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir.), cert. denied, 493 U.S. 858 (1989).

(1) The Defendant's Statements. The Government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the Government intends to offer in evidence at trial; any response by the defendant to interrogation; the substance of any oral statements which the Government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the Government agent; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2) Arrest Reports, Notes and Dispatch Tapes. The defendant also specifically requests the Government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant. See Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(I).

(3) <u>Brady Material</u>. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the Government's case. Under <u>Brady</u>, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

(4) <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>. The Government must produce this information under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). This request includes any cooperation or attempted cooperation by the defendant as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

(5) <u>The Defendant's Prior Record</u>. The defendant requests disclosure of his prior record. Fed. R. Crim. P. 16(a)(1)(B).

(6) <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, under Rule 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(B) at trial. The defendant requests that such notice be given three (3) weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) <u>Evidence Seized</u>. The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(C).

(8) <u>Request for Preservation of Evidence</u>. The defendant specifically requests the preservation of all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the Government and which relate to the arrest or the events leading to the arrest in this case.

(9) <u>Tangible Objects</u>. The defendant requests the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for

1 use in the Government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim. P.
2 16(a)(2)(c). **Specifically, the defendant requests to view the A-File**.

3       (10) <u>Evidence of Bias or Motive to Lie</u>. The defendant requests any evidence that any prospective
4 Government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or
5 her testimony.

6       (11) <u>Impeachment Evidence</u>. The defendant requests any evidence that any prospective Government
7 witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has
8 made a statement favorable to the defendant. <u>See</u> Fed R. Evid. 608, 609 and 613; <u>Brady v. Maryland</u>, <u>supra</u>.

9       (12) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests any
10 evidence that any prospective witness is under investigation by federal, state or local authorities for any
11 criminal conduct.

12       (13) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The
13 defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show
14 that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and
15 any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an
16 alcoholic.

17       (14) <u>Witness Addresses</u>. The defendant requests the name and last known address of each
18 prospective Government witness. The defendant also requests the name and last known address of every
19 witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will
20 <u>not</u> be called as a Government witness.

21       (15) <u>Name of Witnesses Favorable to the Defendant</u>. The defendant requests the name of any
22 witness who made an arguably favorable statement concerning the defendant or who could not identify him
23 or who was unsure of his identity, or participation in the crime charged.

24       (16) <u>Statements Relevant to the Defense</u>. The defendant requests disclosure of any statement
25 relevant to any possible defense or contention that he might assert.

26       (17) <u>Jencks Act Material</u>. The defendant requests production in advance of trial of all material,
27 including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500.
28 Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks

material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

(18) Giglio Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any Government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any Government witnesses.

(19) Agreements Between the Government and Witnesses. The defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

(20) Informants and Cooperating Witnesses. The defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Placencia-Medina. The Government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). The Government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(21) Bias by Informants or Cooperating Witnesses. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

//

(22) <u>Government Examination of Law Enforcement Personnel Files</u>. Mr. Placencia-Medina requests that the Government examine the personnel files and any other files within its custody, care or control, or which could be obtained by the government, for all testifying witnesses, including testifying officers. Mr. Placencia-Medina requests that these files be reviewed by the Government attorney for evidence of perjurious conduct or other like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory, pursuant to its duty under <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991). The obligation to examine files arises by virtue of the defense making a demand for their review: the Ninth Circuit in <u>Henthorn</u> remanded for <u>in camera</u> review of the agents' files because the government failed to examine the files of agents who testified at trial. This Court should therefore order the Government to review all such files for all testifying witnesses and turn over any material relevant to impeachment or that is exculpatory to Mr. Placencia-Medina prior to trial. Mr. Placencia-Medina specifically requests that the prosecutor, not the law enforcement officers, review the files in this case. The duty to review the files, under <u>Henthorn</u>, should be the prosecutor's. Only the prosecutor has the legal knowledge and ethical obligations to fully comply with this request.

(23) <u>Expert Summaries</u>. Defendant requests written summaries of all expert testimony that the government intends to present under Federal Rules of Evidence 702, 703 or 705 during its case in chief, written summaries of the bases for each expert's opinion, and written summaries of the experts' qualifications. Fed. R. Crim. P. 16(a)(1)(E). This request includes, but is not limited to, fingerprint expert testimony.

(24) <u>Residual Request</u>. Mr. Placencia-Medina intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16. Mr. Placencia-Medina requests that the Government provide him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

//
//
//
//
//

## II.

## MOTIONS TO DISMISS THE INDICTMENT

**A.     Motion to Dismiss The Indictment Because it Fails to Allege All Elements of the Charged Offense**

The indictment must be dismissed because the government has failed to properly allege all elements of the offense.  The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."  Consistent with this Constitutional requirement, the Supreme Court has held that an indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."  United States v. Carll, 105 U.S. 611, 612-13 (1881) (emphasis added).  It is black letter law that an indictment that does not allege an element of an offense, even an implied element, is defective, and should be dismissed.  See, e.g., Russell v. United States, 369 U.S. 749, 769-72 (1962); Stirone v. United States, 361 U.S. 212, 218-19 (1960); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); United States v. Keith, 605 F.2d 462, 464 (9th Cir. 1979).

In this case, the indictment charges a violation of Title 8, United States Code, Sections 1326(a) and (b).  In United States v. Salazar-Lopez, 506 F.3d 748 (9th Cir. 2007), the Ninth Circuit indicated that to be sufficient, an indictment charging a violation of section 1326(b) must allege either that the defendant has been previously removed subsequent to a conviction (*i.e.,* for a misdemeanor, a felony, an aggravated felony, or a crime of violence), or it must allege a specific date of the prior removal.  In this case, the indictment only alleges that Mr. Placencia-Medina "was removed from the United States subsequent to June 26, 2006."  The indictment does not allege either that this removal occurred subsequent to a conviction or allege a specific date of the prior removal.  Therefore, because the indictment does not allege all elements of section 1326(b), the indictment must be dismissed.

Moreover, the indictment fails to allege the following elements necessary to convict Mr. Placencia-Medina of the offense: that Mr. Placencia-Medina knew he was in the United States, he failed to undergo inspection and admission by an immigration officer at the nearest inspection point, and that he voluntarily entered the United States.  As a consequence, it must be dismissed.  See e.g., Nyrienda v. I.N.S., 279 F.3d 620 (8th Cir. 2002) (setting forth the components of an entry under the immigration law); see also United States

v. Pernillo-Fuentes, 252 F.3d 1030 (9th Cir. 2001); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999).[2]

**B.      Dismiss The Indictment Because it Violates Mr. Placencia-Medina's Right to Presentment.**

As a corollary to the above argument, the indictment should be dismissed because it violates Mr. Placencia-Medina' right to presentment. Mr. Placencia-Medina has a Fifth Amendment right to have a grand jury pass upon those facts necessary to convict him at trial. In the indictment, the government included the language: "It is further alleged that defendant Gilberto Placencia-Medina was removed from the United States subsequent to June 26, 2006."[3] The indictment in this case violates Mr. Placencia-Medina's right to presentment in two ways. First, the language added by the government does not ensure that the grand jury actually found probable cause that Mr. Placencia-Medina was deported after April 29, 2003, as opposed to simply being physically removed from the United States. Second, that the grand jury found probable cause to believe that Mr. Placencia-Medina was removed "subsequent to April 29, 2003" does not address the possibility that the government may at trial rely on a deportation that was never presented to, or considered by, the grand jury.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. The Sixth Amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." U.S. Const. Amend. VI. Thus, a defendant has a constitutional right to have the charges against him presented to a grand jury and to be informed of the grand jury's findings via indictment. See Russell v. United States, 369 U.S. 749, 763 (1962) (An indictment

//

---

[2] These issues were decided against Mr. Placencia-Medina in United States v. Rivera-Sillas, 376 F.3d 887 (9th Cir. 2004). However, these issues remain open in the Supreme Court. To reserve these issues for further review, Mr. Placencia-Medina incorporates the arguments made by the defendant in Rivera-Sillas. If the Court wants full briefing on these issues, Mr. Placencia-Medina will provide it.

[3] Presumably, the government added this language in an attempt to comply with the Ninth Circuit's decision in United States v. Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006). In Covian-Sandoval, the Ninth Circuit held that it is an Apprendi violation for a court to increase a person's statutory maximum under 8 U.S.C. § 1326(b) via a court-finding that a person had been removed from the United States following a conviction. This language, however, does not cure the problems with this indictment. Should sentencing become necessary, Mr. Placencia-Medina will file further briefing on this issue.

must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant of what he must be prepared to meet.").

To be sufficient, an indictment must allege every element of the charged offense. See United States v. Morrison, 536 F.2d 286, 287 (9th Cir. 1976) (citing United States v. Debrow, 346 U.S. 374 (1953)). Indeed, in order to be sufficient, an indictment must include implied elements not present in the statutory language. See Du Bo, 186 F.3d at 1179. "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as criminal proceedings progress." United States v. Hill, 279 F.3d 731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." Du Bo, 186 F.3d at 1179.

In the indictment, the government here has added the language: "It is further alleged that defendant Gilberto Placencia-Medina was removed from the United States subsequent to June 26, 2006." There is no indication from this "allegation" that the grand jury was charged with the legal meaning of the word "removal" applicable in this context, as opposed to being simply removed from the United States in a colloquial sense. It is clear from Covian-Sandoval that in order to trigger the enhanced statutory maximum contained in section 1326(b), the government must prove that a person was removed—as that term is used in the immigration context—after having suffered a conviction. 462 F.3d at 1097-1098 (noting as part of its analysis that immigration proceedings have fewer procedural protections that criminal proceedings).  A deportation has the following elements: "(1) that a deportation proceeding occurred as to [the] defendant and as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal of the defendant from the United States."  See United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007) (citing, without contesting, the elements of a deportation provided by the district court.)  As this is the type of removal the government must prove before a petite jury, it is necessary that the government allege such a removal before the grand jury. As returned, however, there is no assurance from the face of the indictment that the grand jury in this case was charged with the <u>type</u> of removal necessary to increase a person's statutory maximum under section 1326(b).

As such, there is no fair assurance that the grand jury will have passed upon those facts necessary to convict Mr. Placencia-Medina. Additionally, as charged, there is no fair assurance that the indictment will contain those allegations the government will attempt to prove at trial. If the government alleged before the

1  grand jury that Mr. Placencia-Medina was removed (in a colloquial sense), but offers proof at trial that
2  Mr. Placencia-Medina was removed (in an immigration sense), there will be a constructive amendment of the
3  indictment at trial. See Stirone v. United States, 361 U.S. 212, 217-19 (1960). Either scenario represents a
4  violation of Mr. Placencia-Medina's right to presentment. Stirone, 361 U.S. at 218-19.

5        A second problem with the indictment is that there is no indication which (if any) deportation the
6  government presented to the grand jury. In most cases, the government will have a choice of deportations to
7  present to the grand jury to support an allegation that a person had been deported after a specific date.
8  According to information provided by the government, although not conceded by the defendant, Mr.
9  Placencia-Medina has been subjected to several removal proceedings. This renders it a very real possibility
10 that the government alleged one deportation to the grand jury to sustain its allegation that Mr. Placencia-
11 Medina was removed from the United States, but will attempt to prove at trial a wholly different deportation
12 to sustain its trial proof. If this were to turn out to be the case, Mr. Placencia-Medina's right to have the grand
13 jury pass on all facts necessary to convict him would be violated. See Du Bo, 186 F.3d 1179.

**C.      Dismiss the Indictment Due to Misinstruction of the Grand Jury.**

15        The indictment in the instant case was returned by the January 2007 grand jury. That grand jury was
16 instructed on January 11, 2007. The instructions to the impaneled grand jury deviate from the instructions
17 at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this
18 district in several ways.[4] First, instructing grand jurors that their singular duty is to determine whether or not
19 probable cause exists and that they have no right to decline to indict when the probable cause standard is
20 satisfied. Second, instructing grand jurors of a non-existent prosecutorial duty to present exculpatory
21 evidence. These instructions compounded by the erroneous instructions and comments to prospective grand
22 jurors during *voir dire* of the grand jury panel, which immediately preceded the instructions. Therefore, the
23 indictment should be dismissed.

24 //

25

---

26 [4] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v. Navarro-Vargas,
27 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-Vargas II); United States v.
   Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas I); United States v. Marcucci, 299 F.3d 1156
28 (9th Cir. 2002) (per curiam). If the Court or the government request further briefing on this issue, or the
   transcript from the grand jury proceedings, then it will be provided forthwith.

## III.

## MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT

The above arguments to dismiss the indictment based on the government's failure to comply with Mr. Placencia-Medina's Fifth and Sixth Amendment rights is premised on Covian-Sandoval having read into section 1326 an additional element—a deportation that occurred at a particular time—that the government must plead to the grand jury and prove to a jury. To the extent the government argues that Covian-Sandoval did not create an additional element, the indictment contains surplusage. In other words, if the government argues that the timing of a person's deportation is not a element of section 1326, but rather a sentencing factor under subsection (b) of section 1326, the indictment alleges a fact—the timing of a person's deportation—the Supreme Court has clearly held to be decided by a judge.

The Ninth Circuit has "repeatedly held that language [in an indictment] that describes elements beyond what is required under statute is surplusage and need not be proved at trial." Bargas v. Burns, 179 F.3d 1207, 1216 n. 6 (9th Cir. 1999). Surplusage in an indictment is subject to being struck at the request of the defendant. United States v. Fernandez, 388 F.3d 1199, 1220-21 (9th Cir. 2004). In this case, if the government argues that the date of a person's deportation is not a required element of section 1326, the indictment contains language beyond that which is necessary to convict Mr. Placencia-Medina of violating section 1326. If the date of a person's deportation is not an element of section 1326, then the language in the indictment—" "It is further alleged that defendant Gilberto Placencia-Medina was removed from the United States subsequent to June 26, 2006"—is surplusage. So too is the government's allegation in the indictment that Mr. Placencia-Medina violated section 1326, subsection (b).

At one time, the Ninth Circuit considered subsection (b) of section 1326 a separate offense from subsection (a). See United States v. Corona-Sanchez, 291 F.3d 1201, 1203 (9th Cir. 2002) (*en banc*). This changed, however, following the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224 (1998). See Corona-Sanchez, 291 F.3d at 1203. In Almendarez-Torres, the Supreme Court decided that subsection (b) of section 1326 described a sentencing provision, to be determined by a judge, rather than a substantive offense. See id. Following Almendarez-Torres, the Ninth Circuit rethought the way in which subsection (b) should be viewed, to the extent that indictments and judgements that reflect a violation of both subsection (a) and subsection (b) of section 1326 should have the reference to subsection (b)

1 struck to "unambiguously reflect that the defendant was convicted of only one punishable offense
2 pursuant . . .." Id.

3 Although an allegation of a particular date of deportation would likely be an appropriate response
4 on the government's part to the holding of Covian-Sandoval, the government here has chosen to include in
5 the indictment an allegation that goes solely towards an allegation under subsection (b) of section 1326.
6 Indeed, the government has chosen to actually allege a violation of subsection (b) of section 1326 in the
7 indictment. As Almendarez-Torres makes clear, however, Congress clearly intended findings under
8 subsection (b) of section 1326 to made by a judge, rather than a jury. Almendarez-Torres, 523 U.S. at 235
9 ("we believe that Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate
10 criminal offense).

11 Although the Ninth Circuit is free to overrule its own precedent regarding whether Congress intended
12 a statutory provision to be decided by a judge, rather than a jury, see, e.g., United States v. Buckland,
13 289 F.3d 558, 564-68 (9th Cir. 2002) (*en banc*) (discussing enhanced penalties under 21 U.S.C. § 841), it has
14 not seen fit to overrule the Supreme Court's decision in Almendarez-Torres. See, e.g., United States v.
15 Weiland, 420 F.3d 1062, 1079 n. 16 (9th Cir. 2005). For these reasons, to the degree the government argues
16 that Covian-Sandoval did not create an additional element of section 1326, the government has pled in the
17 indictment an allegation that Congress intended to be decided by judge, rather than a jury.[5] Therefore,
18 pursuant to Federal Rule of Criminal Procedure 7(d), Mr. Placencia-Medina moves to strike this surplusage
19 from the indictment.

20 //
21 //
22 //
23 //
24 //

---

[5] The holdings in Covian-Sandoval and Almendarez-Torres also render subsection (b) of section 1326 unconstitutional. In Covian-Sandoval, the Ninth Circuit held that a jury must determine the timing of a person's deportation to trigger subsection (b)'s enhanced statutory maximum. Covian-Sandoval, 462 F.3d 1097-1098. In Almendarez-Torres, however, the Supreme Court held that Congress intended subsection (b) to be a sentencing provision to be determined by a judge. Almendarez-Torres, 523 U.S. at 235. It is thus clear that subsection (b), as written and construed by the Supreme Court, violates Apprendi.

## IV.

## MOTION TO PRODUCE GRAND JURY TRANSCRIPTS

Mr. Placencia-Medina hereby moves this Court to compel the government to produce all grand jury transcripts in this case. See U.S. CONST. AMENDS V & VI[6]. Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) allows disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Given the above arguments, it is clear that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P 6(e)(3)(E)(ii). (*I.e.,* whether the government presented and proved an actual "removal[7]" to the grand jury; whether the "removal" occurred subsequent to June 26, 2006, etc.)

Mr. Placencia-Medina requests the Court "authorize disclosure" of the grand jury transcript to allow Mr. Placencia-Medina to adequately prepare for trial and to perfect his appellate record. See id.

## V.

## MOTION TO SUPPRESS STATEMENTS

Mr. Placencia-Medina moves to suppress his statements on the grounds of an invalid Miranda waiver and voluntariness.

---

[6] The Supreme Court has found that "[t]he grand jury is an integral part of our constitutional heritage which was brought to this country with the common law. The Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee of individual liberty . . . the grand jury continues to function as a barrier to reckless or unfounded charges. 'Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice.' Costello v. United States, 350 U.S. 359, 362 (1956). Its historic office has been to provide a shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance. " United States v. Manduano, 425 U.S. 564, 571 (1976). In order to ensure that the criminally accused are safeguarded from reckless and unfounded charges, judges must take their duty to provide guidance seriously and not simply pay lip service to the assurances of the government. It is curious why the government, in this district in particular, fights so hard to keep grand jury proceedings sealed. Interestingly, in many cases, the "witness" who "testifies" before the grand jury is a border patrol agent who neither participated in the arrest or the investigation. He is only called to read a report which has been prepared by others. Such a practice does not allow for the considered judgment of grand jurors. Thus, the release of transcripts is appropriate.

[7] As is indicated above, a "removal" has the following elements: "(1) that a deportation proceeding occurred as to [the] defendant and as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal of the defendant from the United States." See Castillo-Basa, 483 F.3d 890.

**A.      The Government Must Demonstrate Compliance with *Miranda*.**

In order for any statements made by Mr. Placencia-Medina to be admissible against him, the government must demonstrate that they were obtained in compliance with the Miranda decision. The government must establish that Mr. Placencia-Medina's waiver of his Miranda rights was voluntary, knowing, and intelligent. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973). When interrogation continues without the presence of an attorney, and a statement results, the government has a heavy burden to demonstrate that the defendant has intelligently and voluntarily waived his privilege against self-incrimination. Miranda, 384 U.S. at 475. The court must indulge every reasonable presumption against waiver of fundamental constitutional rights, so the burden on the government is great. United States v. Heldt, 745 F. 2d 1275, 1277 (9th Cir. 1984).

In determining whether a waiver is voluntary, knowing, and intelligent, the court looks to the totality of the circumstances surrounding the case. Edwards v. Arizona, 451 U.S. 477 (1981); United States v. Garibay, 143 F.3d 534 (9th Cir. 1998). The Ninth Circuit has held that determination of the validity of a Miranda waiver requires a two prong analysis: the waiver must be both (1) voluntary and (2) knowing and intelligent. Derrick v. Peterson, 924 F. 2d 813 (9th Cir. 1990). The second prong requires an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id. at 820-821 (quoting Colorado v. Spring, 479 U.S. 564, 573 (1987)). Not only must the waiver be uncoerced, then, it must also involve a "requisite level of comprehension" before a court may conclude that Miranda rights have been legitimately waived. Id. (quoting Colorado v. Spring, 479 U.S. at 573). Unless and until Miranda warnings and a knowing and intelligent waiver are demonstrated by the prosecution, no evidence obtained as a result of the interrogation can be used against the defendant. Miranda, 384 U.S. at 479. The government in this case must prove that Mr. Placencia-Medina waived his rights intelligently and voluntarily. Mr. Placencia-Medina disputes any allegation any waiver was knowing, intelligent, and voluntarily.

**B.      Mr. Placencia-Medina's Statements Must Be Voluntary.**

Even if this Court determines that Mr. Placencia-Medina validly waived his Miranda rights, it must still make a determination that any statements are voluntary. Under 18 U.S.C. § 3501(a), this Court is required to determine, whether any statements made by Mr. Placencia-Medina are voluntary. In addition,

1  section 3501(b) requires this Court to consider various enumerated factors, including whether Mr. Placencia-
2  Medina understood the nature of the charges against him and whether he understood his rights. Without such
3  evidence, this Court cannot adequately consider these statutorily mandated factors.

4  Moreover, section 3501(a) requires this Court to make a factual determination. Where a factual
5  determination is required, Fed. R. Crim. P. 12 obligates courts to make factual findings. See United States
6  v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression hearings are often as important
7  as the trial itself,'" id. at 610 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be
8  supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's
9  responsive pleading.

10  Mr. Placencia-Medina moves for the production of the following discovery. This request is not
11  limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in
12  the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See
13  United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

14  **C.    This Court Must Conduct An Evidentiary Hearing**

15  Accordingly, this Court must conduct an evidentiary hearing to determine whether the government
16  can meet this burden and use Mr. Placencia-Medina's statements against him. 18 U.S.C. § 3501. Since
17  "'suppression hearings are often as important as the trial itself,'" these findings should be supported by
18  evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive
19  pleading. See United States v. Prieto-Villa, 910 F.2d 601, 609-610 (9th Cir. 1990) (quoting Waller v.
20  Georgia, 467 U.S. 39, 46 (1984)). Mr. Placencia-Medina's statements were made as a result of the coercive
21  tactics employed by the agents. Unless and until the government demonstrates that these statements were
22  made voluntarily, the statements may <u>not</u> be used <u>for any purpose</u> at trial.

23                                              **VI.**

24                        **REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

25  Mr. Placencia-Medina and defense counsel have not received all the discovery in this case. As new
26  information comes to light, the defense may find it necessary to file further motions. Therefore, defense
27  counsel requests the opportunity to file further motions based upon information gained from any further
28  discovery.

# VII.

# **CONCLUSION**

For the reasons stated above, Mr. Placencia-Medina respectfully requests that this Court grant the foregoing motions.

Respectfully submitted,

/s/ *Robert R. Henssler, Jr.*

Dated: April 21, 2008

**ROBERT R. HENSSLER, JR.**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Placencia-Medina