KAREN P. HEWITT
United States Attorney
AARON B. CLARK
Assistant United States Attorney
California State Bar No. 239764
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6787/(619)235-2757(Fax)
E-mail: aaron.clark@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0799-BEN |
|---|---|---|
| Plaintiff, | ) ) | DATE:  May 5, 2008<br>TIME:  2:00 p.m. |
| v. | ) ) | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS TO: |
| GILBERTO PLACENCIA-MEDINA, | ) ) | |
| Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | (1)  COMPEL DISCOVERY;<br>(2)  PRESERVE EVIDENCE;<br>(3)  DISMISS INDICTMENT BECAUSE IT FAILS TO ALLEGE ALL ELEMENTS OF THE CHARGED OFFENSE;<br>(4)  DISMISS THE INDICTMENT BECAUSE IT VIOLATES DEFENDANT'S RIGHT TO PRESENTMENT;<br>(5)  DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY;<br>(6)  STRIKE SURPLUSAGE FROM THE INDICTMENT;<br>(7)  PRODUCE GRAND JURY TRANSCRIPTS;<br>(8)  SUPPRESS STATEMENTS; AND<br>(9)  LEAVE TO FILE FURTHER MOTIONS |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel Karen P. Hewitt, United States Attorney, and Aaron B. Clark, Assistant U.S. Attorney, and hereby files its Response to the Motions filed on behalf of the above-captioned defendant. This Response and is based upon the files and records of this case.

//

**I.**

**STATEMENT OF THE CASE**

On March 19, 2008, a federal grand jury in the Southern District of California returned a true bill of Indictment charging Gilberto Placencia-Medina ("Defendant") with one count of Attempted Entry After Deportation in violation of Title 8, United States Code, § 1326(a) and (b). Defendant was arraigned on the indictment on March 20, 2008 and entered a plea of "not guilty."

**II.**

**STATEMENT OF THE FACTS**

**A.     IMMIGRATION HISTORY**

Defendant is a Mexican citizen who was ordered removed by an immigration judge on September 14, 2005. Defendant has also been physically removed from the United States on numerous occasions. His latest removal occurred on February 16, 2008, by foot, through the San Ysidro, California Port of Entry.

**B.     RAP SHEET SUMMARY CHART**

| CONVICT DATE | COURT OF CONVICTION | CHARGE | TERM |
|---|---|---|---|
| 6-26-06 | USDC SDCA | 8 U.S.C. 1326 – Deported Alien Found in the United States | 18 months |
| 5-10-04 | USDC SDCA | 18 U.S.C. 1001 – False Statement to a Federal Officer | 10 months |
| | | Supervised Release Revocation (8-7-06) | 12 months |
| 8-29-03 | USDC SDCA | 18 U.S.C. 1001 – False Statement to a Federal Officer | 6 months |
| | | Supervised Release Revocation (8-6-04) | 6 months |
| | | Supervised Release Revocation (8-11-06) | 6 months |

| 7-10-98 | USDC SDCA | 8 U.S.C. 1326 – Deported Alien Found in the United States | 60 days |

**C.    DEFENDANT'S APPREHENSION**

On February 18, 2008, at approximately 1:50 a.m., United States Border Patrol Agent ("BPA") Jarod Schulick was conducting line watch operations in the Imperial Border Patrol Station area of operations. At that time he received word from a Remote Video Surveillance System operator that two people were between the primary and secondary border fences in an area known as "Washerwoman's." "Washerwoman's" is approximately 2 miles east of the San Ysidro, California, Port of Entry and approximately 25 yards north of the border between the United States and Mexico.

Agent Schulick responded to the area and found two people, on of whom was Defendant, holding a ladder near the secondary fence. The two people began to flee when they saw Agent Schulick. After a brief pursuit, Agent Schulick apprehended both. Upon questioning, the two individuals freely admitted they were Mexican citizens without documents to be in the United States legally. Defendant was thereafter arrested and brought to the Imperial Beach Border Patrol Station for processing.

The Defendant was subsequently advised of his Miranda rights, which he elected to waive. Defendant then admitted to being a citizen of Mexico without documents to be in the United States legally. He further admitted that he had been previously deported.

**III.**

**POINTS AND AUTHORITIES**

**A.    DISCOVERY REQUESTS AND MOTION TO PRESERVE EVIDENCE**

   **1.    The Government Has or Will Disclose Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure**

The government has disclosed, or will disclose well in advance of trial, any statements subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of Defendant's oral statements *in response to government interrogation*) and 16(a)(1)(B) (Defendant's relevant written or recorded statements, written records containing substance of Defendant's oral statements *in response to government interrogation*, and Defendant's grand jury testimony).

a. <u>The Government Will Comply With Rule 16(a)(1)(D)</u>

To the extent he has a criminal record, Defendant has already been provided with his or her own "rap" sheet and the government will produce any additional information it uncovers regarding Defendant's criminal record. Any subsequent or prior similar acts of Defendant that the government intends to introduce under Rule 404(b) of the Federal Rules of Evidence will be provided, along with any accompanying reports, at a reasonable time in advance of trial.

b. <u>The Government Will Comply With Rule 16(a)(1)(E)</u>

The government will permit Defendant to inspect and copy or photograph all books, papers, documents, data, photographs, tangible objects, buildings or places, or portions thereof, that are material to the preparation of Defendant's defense or are intended for use by the government as evidence-in-chief at trial or were obtained from or belong to Defendant.

Reasonable efforts will be made to preserve relevant physical evidence which is in the custody and control of the investigating agency and the prosecution, with the following exceptions: drug evidence, with the exception of a representative sample, is routinely destroyed after 60 days, and vehicles are routinely and periodically sold at auction. Records of radio transmissions, if they existed, are frequently kept for only a short period of time and may no longer be available. Counsel should contact the Assistant United States Attorney assigned to the case two weeks before the scheduled trial date and the Assistant will make arrangements with the case agent for counsel to view all evidence within the government's possession.

c. <u>The Government Will Comply With Rule 16(a)(1)(F)</u>

The government will permit Defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, that are within the possession of the government, and by the exercise of due diligence may become known to the attorney for the government and are material to the preparation of the defense or are intended for use by the government as evidence-in-chief at the trial. Counsel for Defendant should contact the Assistant United States Attorney assigned to the case and the Assistant will make arrangements with the case agent for counsel to view all evidence within the government's possession.

      d.      <u>The Government Will Comply With Its Obligations Under Brady v. Maryland</u>

The government is well aware of and will fully perform its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist that is, or may be, favorable to the accused, or that pertains to the credibility of the government's case. As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

611 F.2d at 774-775 (citations omitted). <u>See</u> also <u>United States v. Sukumolachan</u>, 610 F.2d 685, 687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not exist); <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976) (<u>Brady</u> does not create any pretrial privileges not contained in the Federal Rules of Criminal Procedure).

      e.      <u>Discovery Regarding Government Witnesses</u>

      (1)      <u>Agreements.</u> The government has disclosed or will disclose the terms of any agreements by Government agents, employees, or attorneys with witnesses that testify at trial. Such information will be provided at or before the time of the filing of the Government's trial memorandum.[1] The government will comply with its obligations to disclose impeachment evidence under <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

      (2)      <u>Bias or Prejudice.</u> The government has provided or will provide information related to the bias, prejudice or other motivation to lie of government trial witnesses as required in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959).

---

[1] As with all other offers by the government to produce discovery earlier than it is required to do, the offer is made without prejudice. If, as trial approaches, the government is not prepared to make early discovery production, or if there is a strategic reason not to do so as to certain discovery, the government reserves the right to withhold the requested material until the time it is required to be produced pursuant to discovery laws and rules.

(3) <u>Criminal Convictions.</u> The government has produced or will produce any criminal convictions of government witnesses plus any *material* criminal acts which did not result in conviction. The government is not aware that any prospective witness is under criminal investigation.

(4) <u>Ability to Perceive.</u> The government has produced or will produce any evidence that the ability of a government trial witness to perceive, communicate or tell the truth is impaired or that such witnesses have ever used narcotics or other controlled substances, or are alcoholics.

(5) <u>Witness List.</u> The government will endeavor to provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the government's trial memorandum is filed, although delivery of such a list is not required. <u>See</u> <u>United States v. Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Culter</u>, 806 F.2d 933, 936 (9th Cir. 1986); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987). Defendant, however, is not entitled to the production of addresses or phone numbers of possible government witnesses. <u>See</u> <u>United States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir. 1977), <u>cert. denied</u>, 419 U.S. 834 (1974). Defendant has already received access to the names of potential witnesses in this case in the investigative reports previously provided to him or her.

(6) <u>Witnesses Not to Be Called.</u> The government is not required to disclose all evidence it has or to make an accounting to Defendant of the investigative work it has performed. <u>Moore v. Illinois</u>, 408 U.S. 786, 795 (1972); <u>see</u> <u>United States v. Gardner</u>, 611 F.2d 770, 774-775 (9th Cir. 1980). Accordingly, the government objects to any request by Defendant for discovery concerning any individuals whom the government does not intend to call as witnesses.

(7) <u>Favorable Statements.</u> The government has disclosed or will disclose the names of witnesses, if any, who have made favorable statements concerning Defendant which meet the requirements of <u>Brady</u>.

(8) <u>Review of Personnel Files.</u> The government has requested or will request a review of the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for <u>Brady</u> material. The government will request that counsel for the appropriate federal law enforcement agency conduct such review. <u>United States v. Herring</u>, 83 F.3d 1120 (9th Cir. 1996); <u>see</u>,

1 also, United States v. Jennings, 960 F.2d 1488, 1492 (9th Cir. 1992); United States v. Dominguez-Villa,
2 954 F.2d 562 (9th Cir. 1992).

3 Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and United States v. Cadet,
4 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable to the defense
5 that meets the appropriate standard of materiality . . ." United States v. Cadet, 727 F.2d at 1467, 1468.
6 Further, if counsel for the United States is uncertain about the materiality of the information within its
7 possession in such personnel files, the information will be submitted to the Court for in camera
8 inspection and review.

9 (9)  Government Witness Statements.  Production of witness statements is
10 governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies on direct
11 examination. United States v. Taylor , 802 F.2d 1108, 1118 (9th Cir. 1986); United States v. Mills,
12 641 F.2d 785, 790 (9th Cir. 1981)).  Indeed, even material believed to be exculpatory and therefore
13 subject to disclosure under the Brady doctrine, if contained in a witness statement subject to the Jencks
14 Act, need not be revealed until such time as the witness statement is disclosed under the Act. See United
15 States v. Bernard, 623 F.2d 551, 556-57 (9th Cir. 1979).

16 The government reserves the right to withhold the statements of any particular witnesses it
17 deems necessary until after the witness testifies.  Otherwise, the government will disclose the statements
18 of witnesses at the time of the filing of the government's trial memorandum, provided that defense
19 counsel has complied with Defendant's obligations under Federal Rules of Criminal Procedure 12.1,
20 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse Jencks" statements at that
21 time.

22
23     f.   The Government Objects To The Full Production Of Agents' Handwritten Notes At This Time
24
25 Although the government has no objection to the preservation of agents' handwritten notes, it
26 objects to requests for full production for immediate examination and inspection.  If certain rough notes
27 become relevant during any evidentiary proceeding, those notes will be made available.
28 Prior production of these notes is not necessary because they are not "statements" within the
meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness'

1  assertions *and* they have been approved or adopted by the witness. United States v. Spencer, 618 F.2d
2  605, 606-607 (9th Cir. 1980); see also United States v. Griffin, 659 F.2d 932, 936-938 (9th Cir. 1981).

### g. All Investigatory Notes and Arrest Reports

The government objects to any request for production of all arrest reports, investigator's notes, memos from arresting officers, and prosecution reports pertaining to Defendant. Such reports, except to the extent that they include Brady material or the statements of Defendant, are protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in connection with the investigation or prosecution of the case."

Although agents' reports may have already been produced to the defense, the government is not required to produce such reports, except to the extent they contain Brady or other such material. Furthermore, the government is not required to disclose all evidence it has or to render an accounting to Defendant of the investigative work it has performed. Moore v. Illinois, 408 U.S. 786, 795 (1972); see United States v. Gardner, 611 F.2d 770, 774-775 (9th Cir. 1980).

### h. Expert Witnesses.

Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial memorandum, the government will provide the defense with notice of any expert witnesses the testimony of whom the government intends to use under Rules 702, 703, or 705 of the Fed. R. of Evidence in its case-in-chief. Such notice will describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications. Reciprocally, the government requests that the defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

### i. Information Which May Result in Lower Sentence.

Defendant has claimed or may claim that the government must disclose information about any cooperation or any attempted cooperation with the government as well as any other information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland. The government respectfully contends that it has no such disclosure obligations under Brady.

The government is not obliged under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), cert. denied, 479 U.S.

1094 (1987); United States v. Prior, 546 F.2d 1254, 1259 (5th Cir. 1977). Brady is a rule of disclosure. There can be no violation of Brady if the evidence is already known to Defendant.

Assuming that Defendant did not already possess the information about factors which might affect their respective guideline range, the government would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. "No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains of value." United States v. Juvenile Male, 864 F.2d 641 (9th Cir. 1988).

**B.    DEFENDANT'S MOTIONS TO DISMISS THE INDICTMENT SHOULD BE DENIED**

**1.    The Indictment Properly Alleges All Necessary Elements of the Charged Offense**

Defendant alleges that the indictment must be dismissed under United States v. Salazar-Lopez, 506 F.3d 748 (9th Cir. 2007), because it fails to allege either a removal subsequent to a conviction or a specific date of the prior removal. [Def. Motion 7.] Defendant here is mistaken, as Salazar-Lopez approves of the language that is found in the indictment against this Defendant. Specifically, the Ninth Circuit stated that "the date of the removal, or at least the fact that [Defendant] had been removed *after* his conviction, should have been alleged in the indictment and proved to the jury." Id. at 752 (emphasis added). The indictment addressed by the Ninth Circuit in Salazar-Lopez did not have the requisite language, and therefore the Court performed a harmless error analysis. Id. at 752-755. Here, however, the indictment expressly states: "It is further alleged that defendant GILBERTO PLACENCIA-MEDINA was removed from the United States subsequent to June 26, 2006." Defendant's motion should therefore be denied.[2/]

**2.    The Indictment Does Not Violate Defendant's Right to Presentment**

Defendant's second argument is that the indictment violates his rights under the Fifth Amendment's Presentment Clause. Defendant claims that: (1) there is no indication that the grand jury "was charged with the legal meaning of the word 'removal' . . . as opposed to being simply removed from the United States in a colloquial sense"; and (2) that the Government may, at trial, rely on a

---

[2/]    It seems noteworthy that Defendant later argues that this very language is surplusage that must be struck from the indictment. [Def. Supp. Mot. 11-12.]

1  deportation that was never presented to the grand jury. (Def. Mot. at 8-10). Defendant's claims lack
2  merit.
3        In the first place, Defendant has no basis arguing that the Government might try to offer evidence
4  of a removal that differs from the one presented to the grand jury, much less that this would be improper.
5  As the Court is aware, Defendant's argument is undercut by the fact that the Government often presents
6  evidence in § 1326 prosecutions of multiple deportations. This longstanding practice belies Defendant's
7  claim that the Government is limited to proving one deportation and that this particular deportation must
8  be presented to the grand jury. Even apart from that practice, it is not at all clear that an element of
9  § 1326 is the *date* of a deportation rather than the *fact* of deportation itself. If <u>Covian-Sandoval</u>, 462
10 F.3d at 1097-98, does not hold that the date is an element of the offense, then the Presentment Clause
11 is not even implicated. In any event, this is a moot point, as the Government has produced discovery
12 showing precisely when Defendant was removed from the United States subsequent to June 26,
13 2006—the date alleged in the indictment.
14
15       Furthermore, the Court should reject Defendant's motion to dismiss the indictment based on his
16 speculation regarding the adequacy of the instructions to the grand jury regarding legal terms such as
17 "removal" or "deportation." The U.S. Supreme Court has held that the Fifth Amendment right not to
18 be tried for a crime not presented to a grand jury is triggered by "only a defect so fundamental that it
19 causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment."
20 <u>Midland Asphalt Corp. v. United States</u>, 489 U.S. 794, 802 (1989). If a grand jury returns an indictment
21 when there is insufficient evidence to indict, the greatest safeguard is the petit jury and the rules
22 governing its determination of guilty. <u>United States v. Sears, Roebuck & Co.</u>, 719 F.2d 1386, 1392 n.7
23 (9th Cir. 1983). An accused's *only* cognizable interest in grand jury proceedings—and thus the *only*
24 interest that courts can vindicate by dismissing an indictment on constitutional grounds—is the right to
25 have a legally constituted grand jury make an informed and independent evaluation of the evidence to
26 determine if there is probable cause to believe him guilty of a crime. <u>Id.</u> (citing <u>United States v. Wright</u>,
27 667 F.2d 793, 796 (9th Cir. 1982) (assuming erroneous grand jury instructions but still refusing to
28 dismiss indictment)). The defendant must show that the prosecutor's conduct was "so flagrant" that it

deceived the grand jury in a significant way, thereby infringing on its ability to exercise independent judgment. See Wright, 667 F.2d at 796.

In United States v. Kenny, 645 F.2d 1323 (9th Cir. 1981), the Ninth Circuit rejected the defendant's request to dismiss the indictment on the basis of his allegation that the grand jury returned a true bill without any instruction on the applicable law. The Court stated that it was "not persuaded that the Constitution imposes the additional requirement that grand jurors receive legal instructions" and warned that "the giving of such instructions portends protracted review of their adequacy and correctness." Id. at 1347.

In this case, Defendant seeks to accomplish precisely what Kenny warned of. Namely, he wishes for this Court to review the adequacy and correctness of any instruction to the grand jury. The Court cannot and should not do so. This is particularly true considering that even if there was evidence—rather than Defendant's mere speculation—that the grand jury was not instructed on an element of the offense, this would not be sufficient grounds to compel the dismissal of the indictment. See United States v. Larrazolo, 869 F.2d 1354, 1359 (9th Cir. 1989), overruled on other grounds by Midland Asphalt, 489 U.S. at 799-800.

Defendant does not and cannot credibly allege that the Government attempted to mislead the grand jury. Furthermore, there is no basis to suppose that the grand jury was impaired in its ability to independently evaluate the evidence. As Defendant offers nothing but speculation to support his motion to dismiss, it should be denied.

**3.    Defendant Has Not Demonstrated that the Grand Jury was Misinstructed**

Defendant argues that the grand jury was misinstructed in two distinct ways, yet articulates no basis for these assertions. As such, his motion to dismiss the indictment on this ground should also be denied.

**C.    DEFENDANT'S MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT SHOULD BE DENIED**

Defendant next argues that indictment contains surplusage. Specifically, Defendant contends that the allegation "It is further alleged that defendant GILBERTO PLACENCIA-MEDINA was removed from the United States subsequent to June 26, 2006" is unnecessary, as is the allegation that

Defendant violated § 1326(b). [Def. Mot. at 11-12]. The argument is at direct odds with his above motion to dismiss for failure to allege all necessary elements of the charged offense, but should likewise be denied.

"The purpose of a motion to strike under Fed.R.Crim.P. 7(d) is to protect a defendant against 'prejudicial or inflammatory allegations that are neither relevant nor material to the charges.'" United States v. Terrigno, 838 F.2d 371, 373 (9th Cir. 1988) (quoting United States v. Ramirez, 710 F.2d 535, 544-55 (7th Cir. 1983)). However, even if facts contained in an indictment's allegations are prejudicial, they should not be stricken if they are material and relevant to the charges. Id.

The date of Defendant's removal is material and relevant to the charge under § 1326. Although the Government need not take the position that Covian-Sandoval engrafted a new element onto § 1326, the date of Defendant's deportation in relation to his prior conviction is relevant for sentencing purposes under § 1326(b). Defendant's own pleadings maintain that Covian-Sandoval requires the Government to prove that he was removed subsequent to a conviction in order to trigger the enhanced statutory maximum contained in § 1326. [Def. Mot. at 9.]. As such, the fact that Defendant was deported after June 26, 2006 (the date of his conviction his previous conviction in this district under Title 8 United States Code Section 1326), is the "functional equivalent" of an element under § 1326. See United States v. Minore, 292 F.3d 1109, 1116-17 (9th Cir. 2002); United States v. Buckland, 289 F.3d 558, 564-68 (9th Cir. 2002) (en banc). Therefore, this date should be submitted to the jury.[3] See Buckland, 289 F.3d at 568 (holding that material facts increasing sentence should be submitted to jury). The allegation is neither prejudicial nor inflammatory. As such, Defendant's request to strike the allegation should be denied.

//
//
//

---

[3] Contrary to the implications of a footnote of Defendant's brief, this does not imply that United States v. Almendarez-Torres, 523 U.S. 224 (1998), has been overruled. At minimum, the fact of Defendant's prior conviction will still be entrusted to the Court's determination.

### D. DEFENDANT'S MOTION TO PRODUCE GRAND JURY TRANSCRIPTS SHOULD BE DENIED

Defendant moves for production of the grand jury transcripts. This request must be denied, since Defendant does not support the request with any showing remotely approaching the level of necessity required to invade the sanctity of the grand jury's deliberations.

The need for grand jury secrecy remains paramount unless the defendant can show "a particularized need" that outweighs the policy of grand jury secrecy. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985). Furthermore, it is well settled that the grand jury may indict someone based on inadmissible evidence or evidence obtained in violation of the rights of the accused. See United States v. Mandujano, 425 U.S. 564 (1976) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination); United States v. Calandra, 414 U.S. 338, 343 (1974); United States v. Blue, 384 U.S. 251 (1966) (indictment brought based on evidence obtained in violation of defendant's right against self-incrimination) ; Lawn v. United States, 355 U.S. 339 (1958); Costello v. United States, 350 U.S. 359, 363 (1956) ("neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act"); see also Reyes v. United States, 417 F.2d 916, 919 (9th Cir. 1969); Johnson v. United States, 404 F.2d 1069 (9th Cir. 1968); Wood v. United States, 405 F.2d 423 (9th Cir. 1968); Huerta v. United States, 322 F.2d 1 (9th Cir. 1963).

The Ninth Circuit has recognized the grand jury's unique history, secrecy, and role. See United States v. Navarro-Vargas, 408 F.3d 1184, 1188-1201 (9th Cir. 2005). Tracing the history of the grand jury from English common law, the U.S. Supreme Court has observed that grand jurors were not hampered by technical or evidentiary laws, and traditionally could return indictments based not on evidence presented to them at all, but on their own knowledge of the facts. See Costello, 350 U.S. at 363. In light of this tradition, the Court held that "neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act," and that grand jury indictments could not be challenged based on the insufficiency or incompetence of the evidence. Id. Rather, "[a]n indictment returned by a legally constituted and unbiased grand jury, like

1  an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on
2  the merits." Id. at 409.

3  Here, Defendant suggests no grounds on which proceedings before the grand jury would warrant
4  dismissal of the indictment, neither can he point to anything untoward that might have occurred before
5  the grand jury that could possibly warrant dismissal. As such, his request for transcripts should be
6  denied.

7  **E.    DEFENDANT'S MOTION TO SUPPRESS SHOULD BE DENIED**

8  Defendant moves to suppress statements and requests that the Government prove that all
9  statements were voluntarily made, and made after a knowing and intelligent Miranda waiver. Defendant,
10 however, fails to support his motion with the required declaration. CrimLR 47.1(g). Defendant's
11 Motion should therefore be denied.

12 Even if Defendant had attached the required declaration, however, Defendant's statements are
13 admissible.

14  **1.    Standards Governing Admissibility of Statements**

15 A statement made in response to custodial interrogation is admissible under Miranda v. Arizona,
16 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the
17 statement was made after an advisement of rights, and was not elicited by improper coercion.
18 Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs
19 voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the
20 "absence of police overreaching"; "coercive police activity is a necessary predicate to the finding that
21 a confession is not 'voluntary'"). Although the totality of circumstances, including characteristics of
22 the defendant and details of the interview, should be considered, improper coercive activity is a
23 necessary predicate to suppression of any statement. Id.; cf. Schneckloth v. Bustamonte, 412 U.S. 218,
24 226 (1973). Although it is possible for a defendant to be in such a poor mental or physical condition
25 that they cannot rationally waive their rights (and misconduct can be inferred based on police
26 knowledge of such condition, Connelly, 479 U.S. at 167-68), the condition must be so severe that the
27 defendant was rendered utterly incapable of rational choice. United States v. Kelley, 953 F.2d 562, 565
28

1  (9th Cir.1992) (collecting cases rejecting claims of physical/mental impairment as insufficient to prevent exercise of rational choice).

### 2. Defendant's Statements Should Not Be Suppressed

Defendant's post-arrest statements are admissible because he voluntarily waived his <u>Miranda</u> rights. A statement made in response to custodial interrogation is admissible under <u>Miranda v. Arizona</u>, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. <u>Colorado v. Connelly</u>, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and <u>Miranda</u> determinations; valid waiver of <u>Miranda</u> rights should be found in the "absence of police overreaching"; "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'").

On February 18, 2008, at about 5:09 a.m., Border Patrol Agent Silvia Casillas read Defendant his <u>Miranda</u> rights, which was witnessed by Border Patrol Agent Rene H. Ceniceros. Defendant acknowledged that he understood his rights and agreed to waive his rights and make a statement. Defendant's statement was recorded on video. These recordings, which Defendant received in discovery, make clear that Defendant was advised of his <u>Miranda</u> rights and that he voluntarily waived his rights prior to making any statements.

Again, Defendant has not alleged any specific facts to support that the advisement of rights was somehow flawed or that his waiver of his <u>Miranda</u> rights was the result of improper coercion. Indeed, Defendant's allegation of a <u>Miranda</u> violation is mere boilerplate language that fails to demonstrate there is a disputed factual issue requiring an evidentiary hearing. See <u>United States v. Howell</u>, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); <u>United States v. Batiste</u>, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing"). Accordingly, this Court should deny Defendant's motion to suppress and find, based on the Statement

of Facts attached to the Complaint in this case, that Defendant's statements were voluntary and given in accordance with Miranda.

### F. THE GOVERNMENT DOES NOT OPPOSE LEAVE TO FILE FURTHER MOTIONS, SO LONG AS THEY ARE BASED ON NEW EVIDENCE

The Government does not object to the granting of leave to file further motions as long as the order applies equally to both parties and any additional defense motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion.

## IV.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that, except where unopposed, Defendant's Motions be denied.

DATED: April 25, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

s/Aaron B. Clark
AARON B. CLARK
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: aaron.clark@usdoj.gov

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff<br><br>  v.<br><br>GILBERTO PLACENCIA-MEDINA,<br><br>  Defendant(s). | Case No. 08CR0799-BEN<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, AARON B. CLARK, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Robert R. Henssler

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 25, 2008.

s/ Aaron B. Clark<br>AARON B. CLARK